543 F.2d 86
 Roberto Baez CRUZ, Jr., Plaintiff-Appellant,
v
William H. SKELTON, Individually and as Chariman of the
Texas Board of Pardons and Paroles, Charles G. Shandera,
Individually and as a member of the Texas Board of Pardons
and Paroles, Clyde Whiteside, Individually and as a member
of the Texas Board of Pardons and Paroles, Defendants-Appellees.
 No. 75-2554.
 United States Court of Appeals, Fifth Circuit.
 Nov. 22, 1976.
 
 C. Taylor Ashworth, Dallas, Tex. (Court-appointed), for plaintiff-appellant.
 Jack Boone, Asst. Atty. Gen., John L. Hill, Atty. Gen., Austin, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Texas.
 Before GOLDBERG, DYER and SIMPSON, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 Roberto Baez Cruz brought this civil rights complaint[1] under Title 42, U.S.C., Section 1983, against named members of the Texas Board of Pardons and Parole (Parole Board, or Board) individually and in their official capacities alleging that certain of their rules and practices denied him due process and equal protection within the parole procedure. The plaintiff sought declaratory and injunctive relief, together with $1,000,000 in damages. The district court dismissed the complaint for failure to state a claim upon which relief can be granted. We affirm.
 
 
 2
 Appellant was tried and convicted in 1967, within the courts of Texas, for murder with malice, and sentenced to life in prison. He became eligible for parole, under Texas law, in 1971. He has been denied parole from 1971 through 1975 for reasons of "past assaultive behavior" and that he was a "narcotics user", problems which Cruz alleges are not treated at the Ellis Unit of the Texas Department of Corrections, the prison in which Cruz is confined.
 
 
 3
 Cruz's complaint, when read liberally, makes two general allegations of denial of due process and equal protection. Appellant states that sociologists and psychiatrists and related programs and services are afforded inmates within the Texas prison system other than the Ellis Unit at which those services are not available. Therefore, Cruz concludes that he is the victim of the Parole Board's geographic discrimination in that factors of rehabilitation, denied Cruz because of the limited opportunities of the Ellis Unit, are favorably considered by the Board in the cases of prisoners from other units of the Texas prison system. The sole reason, according to Cruz, that he was denied parole is that he is confined at the Ellis Unit.
 
 
 4
 Cruz also contends that he has been denied due process and equal protection by the Parole Board because he has not, despite his requests, been appointed a lawyer to represent him before the Board. He contends that due process requires, under the facts of this case, that a lawyer be appointed to represent him before the Board. Cruz's secondary contention in this regard is founded upon his observation that both Texas law and the Parole Board rules provide that retained counsel may appear before the Board on behalf of prisoners that can afford such counsel yet no provision is made for the appointment of counsel to represent indigent prisoners before the Board. Cruz alleges that he is indigent, that he has requested counsel be appointed to represent him before the Board, that his request has been denied, and that consequently he is being discriminated against on the basis of his indigent status.
 
 
 5
 We note initially that a Sec. 1983 complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts which would entitle him to relief. Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. The allegations of the complaint, especially a pro se complaint, must be read in a liberal fashion, Haines v. Kerner, 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652; Cruz v. Beto, 1972, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263, and they must be accepted as true in testing their sufficiency, Haines v. Kerner, supra, Cruz v. Beto, supra.
 
 I. DUE PROCESS
 
 6
 Cruz asserts that the Board has denied him due process because: (1) the Board arbitrarily and capriciously denied him a parole solely because he is confined in the Ellis Unit of the Texas prison system, (2) the Board's stated grounds for denial of Cruz's parole, "past assaultive behavior" and "narcotics user" do not take cognizance of Cruz's allegations that the Ellis Unit provides inadequate programs to treat these disorders, (3) the Board denied Cruz the opportunity to personally appear before them to state his case, and (4) the Board would not appoint Cruz counsel to appear before them.
 
 
 7
 The extent of due process to which a prisoner is entitled when applying for an eligible for parole has given rise to considerable confusion within the different circuits. In Childs v. United States Board of Parole, 1974, 67 U.S.App.D.C. 268, 511 F.2d 1270, the District of Columbia Circuit held that "the parole decision must be guided by minimal standards of due process ..." The Second and Fourth Circuits have apparently reached similar conclusions, although the precedential value of their decisions is doubtful in light of the Supreme Court's disposition of them. See United States ex rel. Johnson v. Chairman of New York State Board of Parole, 2 Cir.1974, 500 F.2d 925, vacated as moot, sub nom. Regan v. Johnson, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289; Bradford v. Weinstein, 4 Cir.1975, 519 F.2d 728, cert. granted 1975, 421 U.S. 998, 95 S.Ct. 2394, 44 L.Ed.2d 664, judgment vacated as moot, 1975, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350. We considered the question of due process in the granting of parole and reached an opposite conclusion in Scarpa v. United States Board of Parole, 5 Cir. en banc 1973, 477 F.2d 278, judgment vacated and remanded for a determination of mootness, 1973, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44, dismissed as moot, 5 Cir.1973, 501 F.2d 992. Scarpa was stripped of value as a precedent by its dismissal for mootness,[2] which consigned it to limbo along with United States ex rel. Johnson v. Chairman of New York State Board of Parole, supra, and Bradford v. Weinstein, supra.
 
 
 8
 However, Judge Bell's recent opinion for this Court in Brown v. Lundgren, 5 Cir.1976, 528 F.2d 1050, cer. denied --- U.S. ----, 97 S.Ct. 308, 50 L.Ed.2d 283, 1976, limits any contentions appellant might make concerning the extent of the due process rights due him in the parole granting context. The prisoner, in that case, sought to challenge by means of habeas corpus the parole release process of the United States Board of Parole. We held:
 
 
 9
 "At the constitutional level, there is a clear distinction between the loss of a statutory privilege once obtained and the denial of that same privilege, never given. While the threatened loss of a privilege may be 'grievous' and therefore require some degree of procedural due process protection, see, e.g., Morrissey v. Brewer, 1972, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484, the denial of that privilege may only be subject to the procedural demands of the particular enabling statute. Thus, while parole revocation and prison discipline are clearly within the ambit of the Due Process Clause of the Fifth and Fourteenth Amendments, the mere expectation of parole release while still in otherwise lawful custody is not so vested as to result in a 'grievous loss' if denied by the parole board. We thus disagree with the characterization by the Court of Appeals for the District of Columbia of the denial of parole as a deprivation of 'the valuable features of conditional liberty' equivalent to the loss involved in parole revocation that mandates due process protection. Childs v. United States Board of Parole, 1974, 167 U.S.App.D.C. 268, 511 F.2d 1270, 1278.
 
 
 10
 In any context where it is asserted that constitutional due process is required, the basic, threshold question is whether there is a 'grievous loss' of either a liberty or property interest. If there is no such loss, then the second question of whether the particular challenged procedure comports with fundamental fairness is never reached. In short, we find that the denial of parole as distinguished from the revocation of parole as in Morrissey, supra, is not a 'grievous loss', and we therefore do not consider whether the procedures of the parole board deny constitutional due process." [Footnote omitted]
 
 
 11
 Brown v. Lundgren, supra, at 1052-1053. See further, Shaw v. Briscoe, 5 Cir.1976, 541 F.2d 489, [decided October 29, 1976], where Brown v. Lundgren is relied upon in a state prisoner context.
 
 
 12
 Our decision does not rest entirely upon Brown v. Lundgren. In Cook v. Whiteside, 5 Cir.1974, 505 F.2d 32, we considered a case presenting many of the same problems as are present here in a similar factual context. In Cook a Texas state prisoner brought suit under Sec. 1983 against individual members of the Texas Board of Pardons and Paroles seeking injunctive and declaratory relief, alleging he had been denied due process and equal protection rights in the parole granting process. We held that in the absence of factual averments to support his allegations that the parole board's actions were arbitrary and capricious, Cook's contentions were insufficient to state a claim upon which relief could be granted.[3] We further held, citing Buchanan v. Clark, 5 Cir. 1971, 446 F.2d 1379, cert. denied 404 U.S. 979, 92 S.Ct. 347, 30 L.Ed.2d 294, that the refusal of the Board to appoint Cook counsel did not deny him due process. See further, Sexton v. Wise, 5 Cir.1974, 494 F.2d 1176, 1178. Cf. United States ex rel. Richerson v. Wolff, 7 Cir.1975, 525 F.2d 797, which is supportive in part of the district court holding here, but differs from Brown v. Lundgren in holding that rudimentary due process requirements govern the granting or withholding of parole.
 
 
 13
 We find without merit appellant's contentions centering on "geographic discrimination", upon which he bases his argument that he was arbitrarily and capriciously denied parole because he was confined at the Ellis Unit rather than elsewhere. Attached as Exhibit C to plaintiff's complaint are pages from a pamphlet[4] stating the Criteria for Parole Selection adopted by the Board in its consideration of which prisoners are entitled to and should be granted parole. While several facets of rehabilitation are listed by the Board within these criteria, it appears that the broad range of circumstances the Board considers insures that inmates of the Ellis Unit are not foreclosed from consideration for parole, assuming that the Unit is as bereft of rehabilitative opportunity as the complaint aserts. Any suggestion that the Board is arbitrarily and capriciously failing to follow its own regulations is mere speculation, totally unsupported by factual averments, and is hence insufficient to support a Sec. 1983 complaint. Cook v. Whiteside, supra.
 
 Criteria for Parole Selection
 Parole Consideration Procedure
 
 14
 a. If the total situation seems to favor the inmate's release on parole, his case may be further considered for parole.
 
 
 15
 b. If there is a request for additional information.
 
 
 16
 c. If any action may be deferred to a specific future date.
 
 
 17
 d. If the inmate may be required to serve all of his sentence.
 
 
 18
 "Within one year after a prisoner's admittance to the penal or correctional institution and at such intervals thereafter, as it may determine, the Board shall secure and consider all pertinent information regarding each prisoner, except any under sentence of death, including the circumstances of his offense, his previous social history and criminal record, his conduct, employment and attitude in prison, and the reports of such physical and mental examinations as have been made."
 
 II. EQUAL PROTECTION
 
 19
 Cruz's contentions that he has been denied equal protection because of the alleged "geographic discrimination" by the parole board, while intriguing conceptually, are without merit. Aside from the bare allegation that the Board views with disfavor the inmates at Ellis when the time comes for a decision as to whether to grant an inmate parole, the plaintiff has stated no factual basis in support of his charges. Cruz alleges no "invidious discrimination" based on such considerations as race, religion, national origin, or poverty against inmates of the Ellis Unit. While an exhibit attached to Cruz's complaint indicates a minimal statistical disparity between the paroles granted inmates of the Ellis, Walls, and Diagnostic Units of the Texas Department of Corrections,[5] it is surprising that this disparity is not greater when we recall that Ellis Unit is a maximum security unit housing high security risk prisoners presenting potentially higher parole risk problems. Assuming there exists a basis for the complaint that rehabilitative programs generally available to Texas prisoners are unavailable to inmates of the Ellis Unit, no facts are alleged even suggesting discrimination by the Board in granting paroles as between inmates of Ellis Unit and those lodged at other units in the State system.
 
 TEXAS
 DEPARTMENT OF CORRECTIONS
 ELLIS UNIT
 HUNTSVILLE, TEXAS 77340
 R.M.COUSINS
 WARDEN
 PHONE: 713 295-7042
 
 20
 ELLIS UNIT
 TEXAS BOARD OF PAROLE REPORTS
 SELECTED TABLES
 TABLE XII
 PAROLES GRANTED, ADULT PRISONERS, BY TYPE OF OFFENSE
 1973
----------------------------------------------------------------
OFFENSE DECISIONS PAROLES PERCENT PAROLED
----------------------------------------------------------------
ALL OFFENSES 955 441
--------------------------- --------- -------
WILLFUL HOMICIDE 65 21 32.3
NEGLIGENT MANSLUGHTER 40 17 42.5
ARMED ROBBERY 265 123 46.4
UNARMED ROBBERY 32 15 46.8
AGGRAVATED ASSAULT 51 21 41.1
FORCIBLE RAPE 43 17 39.5
ALL OTHER SEX OFFENSES 37 26 70.2
BURGLARY 140 64 45.7
THEFT OR LARCENY 39 17 43.5
VEHICLE THEFT 21 11 52.3
FORGERY OR LARCENY BY CHECK 19 11 57.3
OTHER FRAUD 15 9 60.0
VIOLATIONS OF DRUG LAWS 160 73 45.6
VIOLATIONS OF ALCOHOL LAWS 13 8 61.5
ALL OTHERS 15 8 53.3
NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
TABLE
 TEXAS
 DEPARTMENT OF CORRECTIONS
 ELLIS UNIT
 HUNTSVILLE, TEXAS 77340
 R.M.COUSINS
 WARDEN
 PHONE: 713 295-7042
 WALLS UNIT
 TEXAS BOARD OF PAROLE REPORTS
 SELECTED TABLES
 TABLE XII
 PAROLES GRANTED, ADULT PRISONERS, BY TYPE OF OFFENSE
 1973
----------------------------------------------------------------
OFFENSE DECISIONS PAROLES PERCENT PAROLED
----------------------------------------------------------------
ALL OFFENSES 836 389
--------------------------- --------- -------
WILLFUL HOMICIDE 59 33 55.9
NEGLIGENT MANSLAUGHTER 33 16 48.4
ARMED ROBBERY 244 105 43.3
UNARMED ROBBERY 29 14 48.2
AGGRAVATED ASSAULT 46 21 45.6
FORCIBLE RAPE 39 19 48.7
ALL OTHER SEX OFFENSES 35 15 42.8
BURGLARY 133 60 45.1
THEFT OR LARCENY 19 9 47.3
VEHICLE THEFT 15 8 53.3
FORGERY OR LARCENY BY CHECK 12 7 58.3
OTHER FRAUD 11 6 54.5
VIOLATIONS OF DRUG LAWS 151 70 46.3
VIOLATIONS OF ALCOHOL LAWS 10 6 60.0
ALL OTHERS 000 000 00.0
NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
TABLE
 TEXAS
 DEPARTMENT OF CORRECTIONS
 ELLIS UNIT
 HUNTSVILLE, TEXAS 77340
 R.M.COUSINS
 WARDEN
 PHONE: 713 295-7042
 DIAGNOSTIC UNIT
 TEXAS BOARD OF PAROLE REPORTS
 SELECTED TABLES
 TABLE XII
 PAROLES GRANTED, ADULT PRISONERS, BY TYPE OF OFFENSE
 1973
----------------------------------------------------------------
OFFENSE DECISIONS PAROLES PERCENT PAROLED
----------------------------------------------------------------
ALL OFFENSES 111 56
--------------------------- --------- -------
WILLFUL HOMICIDE 12 7 58.3
NEGLIGENT MANSLAUGHTER 7 4 57.1
ARMED ROBBERY 11 6 54.5
UNARMED ROBBERY 5 2 40.0
AGGRAVATED ASSAULT 6 2 33.3
FORCIBLE RAPE 4 1 25.0
ALL OTHER SEX OFFENSES 3 2 66.6
BURGLARY 14 6 42.7
THEFT OR LARCENY 11 5 45.4
VEHICLE THEFT 8 5 62.5
FORGERY OR LARCENY BY CHECK 6 4 57.3
OTHER FRAUD 5 3 60.0
VIOLATIONS OF DRUG LAWS 13 6 46.1
VIOLATIONS OF ALCOHOL LAWS 2 1 50.0
ALL OTHERS 4 2 50.0
 
 
 21
 Of crucial importance in this connection is the admitted fact that the Board has no control whatever over the conditions or facilities provided within each unit, and has no part in determining which prisoners are assigned to any of the several units. Those are functions which Cruz and his counsel correctly concede are committed by law to the Texas Department of Corrections and the Texas Board of Corrections.[6] The Board of Pardons and Paroles may not therefore be held accountable for any constitutional deprivations allegedly brought about by the terms, conditions or situs of confinement.
 
 
 22
 Cruz's contention that he is entited to have counsel appointed to represent him before the Board is groundless in the light of the holdings of Cook v. Whiteside and Buchanan v. Clar, supra, that due process does not require counsel at parole application proceedings.[7] The question remains whether the Equal Protection Clause requires that the state appoint counsel for indigents because retained counsel may appear before the Board. This determination requires that we first examine Texas parole procedures in detail.
 
 
 23
 Texas Code of Crim.Proc. Art. 42.12 (Vernon's Supp.1975-76) provides in part that:
 
 
 24
 "Sec. 15(b). Within one year after a prisoner's admittance to the penal or correctional institution and at such intervals thereafter, as it may determine, the Board shall secure and consider all pertinent information regarding each prisoner, except any under sentence of death, including the circumstances of his offense, his previous social history and criminal record, his conduct, employment and attitude in prison, and the reports of such physical and mental examinations as have been made.
 
 
 25
 "Sec. 18. The Board shall formulate rules as to the submission and presentation of information and arguments to the Board for and in behalf of any person within the jurisdiction of the Board.
 
 
 26
 "All persons presenting information or arguments to the Board shall submit therewith an affidavit stating whether any fee has been paid or is to be paid for their services in the case, the amount of such fee, if any, and by whom such fee is paid or to be paid."
 
 
 27
 Rules and Regulations, Texas Department of Corrections, as approved by the Texas Board of Corrections, July 9, 1973, Sec. 7.6, (Cruz Exhibit G) provides that:
 
 
 28
 "Hearings and Interviews on Behalf of Inmate by Others
 
 
 29
 "The Board furnishes no forms for application for paroles and has set no technical rules for presentation and/or arguments.
 
 
 30
 "Any interested person or members of the family may appear before the Board on behalf of an inmate with or without legal counsel." [Emphasis in original]
 
 
 31
 But it by no means follows from the Board's policy of permitting appearances by counsel with interested persons on behalf of an inmate applying for parole that the Board must appoint counsel for indigent inmate parole applicants upon request.
 
 
 32
 The Seventh Circuit, in Ganz v. Bensinger, 7 Cir.1973, 480 F.2d 88, speaking through Judge (now Justice) Stevens, examined a situation almost identical to that here. In Ganz an indigent Illinois state prisoner sought to obtain counsel to represent him before the parole board. The Court of Appeals after rejecting a due process claim to entitlement to appointed counsel, considered whether in light of provisions of Illinois law permitting retained counsel to be heard before the Board equal protection considerations required that counsel be appointed for indigent prisoners. The court held:
 
 
 33
 "The briefs of both parties persuasively indicate that even if the presence of counsel may be desirable at parole release hearings, a lawyer is not indispensable to the effective conduct of such hearings. Unlike the actual importance of a transcript on an appeal from a criminal conviction, or the participation of counsel in the appellate process, this rule of the Illinois Parole Board, in the words of Justice Frankfurter, does not "make lack of means an effective bar to the exercise" of the indigent's opportunity to obtain parole. Justice Frankfurter commented on the impact of the unavailability of a transcript on indigent defendants as a class:
 
 
 34
 "Law addresses itself to actualities. It does not face actuality to suggest that Illinois affords every convicted person, financially competent or not, the opportunity to take an appeal, and that it is not Illinois that is responsible for disparity in material circumstances. Of course, a State need not equalize economic conditions. A man of means may be able to afford the retention of an expensive, able counsel not within reach of a poor man's purse. Those are contingencies of life which are hardly within the power, let alone the duty, of a State to correct or cushion. But when a State deems it wise and just that convictions be susceptible to review by an appellate court, it cannot by force of its exactions draw a line which precludes convicted indigent persons, forsooth erroneously convicted, from securing such a review merely by disabling them from bringing to the notice of an appellate tribunal errors of the trial court which would upset the conviction were practical opportunity for review not foreclosed.
 
 
 35
 "To sanction such a ruthless consequence, inevitably resulting from a money hurdle erected by a State, would justify a latter-day Anatole France to add one more item to his ironic comments on the 'majestic equality' of the law. "The law, in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread.' (John Cournos, A Modern Plutarch, p. 27.)
 
 
 36
 "The State is not free to produce such a squalid discrimination. If it has a general policy of allowing criminal appeals, it cannot make lack of means an effective bar to the exercise of this opportunity." Griffin v. Illinois, 351 U.S. 12, 23-24, 76 S.Ct. 585, 592, 593, 100 L.Ed. 891 (Mr. Justice Frankfurter concurring).
 
 
 37
 That analysis also explains the holding in Douglas v. California that counsel must be appointed to represent the indigent defendant on his first appeal from a criminal conviction, for otherwise "any real chance he may have had of showing that his appeal has hidden merit" is denied to each member of the indigent class. 372 U.S. 353, 356, 83 S.Ct. 814, 816, 9 L.Ed.2d 811. Speaking for the Court, Mr. Justice Douglas then expressly noted that the holding did not extend to discretionary hearings, or to procedures in which the applicant might have successive opportunities for relief. Indeed, even in proceedings in which a person has a constitutional right to representation by a lawyer, the Supreme Court has indicated that there is no parallel requirement that counsel be provided for the indigent.
 
 
 38
 We hold the Equal Protection Clause does not require the Illinois Pardon and Parole Board either (1) to repeal its rule permitting inmates to have the assistance of counsel, or (2) to provide such assistance for all inmates at state expense." [Footnotes omitted]
 
 
 39
 Ganz v. Bensinger, supra, at 90-91.
 
 
 40
 The previously quoted provisions of Texas Law and Parole Board Rules demonstrate that the parole proceedings under consideration are not adversary in the traditional sense. In light of our prior determination of appellant's due process arguments, Cruz cannot now assert that formal or ritualistic proceedings indicative of a full blown hearing, such as the presentation of evidence, and the calling and the examination and cross-examination of witnesses, are part of the Texas parole process. The informal, unstructured procedures for considering parole application to the Texas Board of Parole do not present a forum in which the special analytical, research or forensic skills of the lawyer are necessary, nor even likely to prove particularly helpful. Cf. Gagnon v. Scarpelli, 1973, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. We reject the contention that the Texas procedure operates to deny a meaningful and fair consideration by the Board of Parole application of an indigent prisoner because he is unable to afford counsel. Ganz v. Bensinger, supra.[8]
 
 
 41
 The judgment of the district court dismissing Cruz's complaint for failure to state a cause of action is
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 Cruz has brought a prior, similar, Sec. 1983 suit against the same defendants seeking damages and injunctive relief. The district court dismissed that complaint. We affirmed, Cruz v. Skelton, 5 Cir.1974, 502 F.2d 1101, adopting the Ninth Circuit's holding in Silver v. Dickson, 9 Cir.1968, 403 F.2d 642, cert. denied 969, 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765, that members of the parole board, while employed in the consideration of parole applications, have a quasi-judicial immunity and may not be sued for damages under the civil rights acts. We further held, under authority of Preiser v. Rodriguez, 1973, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439, that Cruz's claims for declaratory and injunctive relief were correctly dismissed by the district court because the relief sought by Cruz was his release from confinement properly cognizable under habeas corpus. Counsel for Cruz at oral argument, while admitting the obvious, that what Cruz ultimately seeks is release, drew a distinction between the prior case, in which the relief sought was actually parole, and the instant case, in which Cruz allegedly seeks only that the parole board afford him his constitutional rights. See Shaw v. Briscoe, 5 Cir.1976, 526 F.2d 675. This distinction between suits is not readily apparent from a comparison of the complaints; however, according to Cruz's pro se complaint an expansive reading, and every benefit of the doubt, we decline to affirm the dismissal of this suit under a theory of res judicata
 
 
 [2]
 Cook v. Whiteside, 5 Cir.1974, 505 F.2d 32; Ridley v. McCall, 5 Cir.1974, 496 F.2d 213
 
 
 [3]
 Cf. Williams v. McCall, 5 Cir.1976, 531 F.2d 1247. That opinion vacated and remanded for further proceedings the district court's dismissal without a hearing of a Sec. 1983 complaint asking for a declaratory judgment that established Georgia parole procedures lacked due process
 The distinction between that case and this is obvious. The crux of that holding emerges from the following quotation (page 1248):
 "The plaintiff here has alleged that the Board does grant interviews to some similarly-situated applicants for parole, but has arbitrarily refused him such an interview. Georgia law allows, but does not require, an interview. Ga.Code Ann. Sec. 77-516. The Board is allowed to promulgate rules and regulations concerning all its functions. Id. Sec. 77-525. The Board, pursuant to Sec. 77-525, has made the following statement:
 Statewide Inmate Interview Program
 Board members cannot personally interview every inmate being considered for parole. However, under a continuing Board policy, inmates hearing their parole consideration date are automatically selected for interview by Board members if they meet certain criteria.
 Georgia State Board of Pardons and Paroles, Rule Book 13 (1975). The Rule Book does not list and define the 'certain criteria'. The plaintiff may be able to show that under a properly promulgated rule he was entitled to an interview, but arbitrarily denied one."
 Contrast the Georgia Board's noted failure to list and define the "certain criteria" governing the granting of interviews, with the carefully delineated criteria Texas prescribes as considerations for granting or withholding parole, Note 4, infra.
 
 
 [4]
 EXHIBIT 'C'
 For a number of years, the Board of Pardons and Paroles as a unit, and each member individually, has been making every effort to improve and standardize the decisions of the Board. The ultimate aim is a system that will allow consideration of every inmate for parole measured by the same standards, rules, and criteria: a system not based upon pressure, money nor whom the inmate may know; but based upon merit and proper application of standardized criteria for selection.
 Realizing that the personal viewpoints, biases, attitudes, and philosophy of each member of the Board will inevitably influence Board decision, it was, therefore, of extreme importance to the development of consistent procedure and to the consideration of uniform criteria for the Board to come to an agreement on philosophy and point of view in the evaluation of criteria for parole selection.
 Bearing in mind the necessity of considering every inmate's case upon the same standards, the Board by unanimous vote adopted the steps for consideration and the general criteria for parole.
 The Texas Parole law states, "A prisoner shall be placed on parole only when arrangements have been made for his proper employment or for his maintenance and care and when the Board believes that he is able and willing to fulfill the obligations of a law-abiding citizen."
 [7.41] The first major factor in considering an inmate for parole is determining the readiness of the offender for parole. This is determined by many factors. Some of these are:
 
 
 [7]
 411 Developmental and criminal history constituting behavior pattern
 
 
 [7]
 412 Addiction to narcotics or alcohol
 
 
 [7]
 413 Attitude toward the crime committed and the future
 
 
 [7]
 414 Adjustments and improvements while in prison
 
 
 [7]
 415 Sexual deviation
 
 
 [7]
 416 Physical and emotional status
 
 
 [7]
 417 Family background and marital history
 
 
 [7]
 418 Psychological summary
 
 
 [7]
 419 Point Incentive Program ratings
 
 
 [7]
 4110 Personal habits and associates
 
 
 [7]
 4111 Educational achievements
 
 
 [7]
 4112 Age
 
 
 [7]
 4113 Military record as it reflects behavior and adjustment
 
 
 [7]
 4114 Time served
 [7.42] The second major factor is the consideration of the kind of offense and manner in which it was committed.
 [7.43] The third major factor is the consideration of the readiness of the community to receive the parolee.
 The willingness of the offender's family to take him back is often important. The attitudes of the sentencing judge, the district attorney, and local law enforcement officers are often reflections of community sentiment and are weighed in the matter of selection of parole.
 [7.44] The Fourth major factor is the consideration of the ratings and combined opinions of the Texas Department of Corrections' Director, the warden of the unit where the inmate is assigned, the Assistant Director for Treatment, the Director of the Bureau of Classification and Records, the inmate's immediate supervisor, the chaplain, and the institutional parole officer.
 No inmate whose record in the Texas Department of Corrections is not clear will be considered for parole or any type of clemency consideration except at the discretion of the Board. A clear conduct record is one of the essential elements to be considered, but it is not, in itself, sufficient grounds for parole.
 [7.45] After a complete analysis and study of all available information, the Board makes its decision guided by the general rules that an inmate should not be released on parole:
 
 
 [7]
 451 If the assaultive potential is high
 
 
 [7]
 452 If there is substantial risk that he will not conform to the conditions of parole
 
 
 [7]
 453 If release at that time will depreciate the seriousness of the offense or promote disrespect for the law of the system of parole
 
 
 [7]
 454 If there is need for continued care (physical or mental)
 
 
 [7]
 455 If there is a need for continued vocational training
 [7.46] The destitute condition of the inmate's family alone has no bearing on his fitness for parole and will not be considered, in itself, as grounds for release.
 The use of the term "eligibility for parole consideration" should not be construed to mean that an inmate as a matter of right is entitled to or will be granted parole; nor should the word "consideration" be confused with final decision. Whenever an inmate is legally eligible to be considered for parole, each member of the Board, acting individually and independently, votes his opinion as the file reaches his desk. One of the following four actions may be taken at this time by each member separately:
 Many cases fall within each of the above categories. The decision of the Board is reached by either a majority or a unanimous opinion. when the Board, or a majority thereof, is of the opinion that an inmate is entitled to further consideration for a parole, the case is investigated. The trial officials of each county in which the inmate was convicted and the prison officials are notified that the inmate's case is being considered. Replies to notification forms are requested in order that the Board may know and that the Board's recommendation will reflect the attitude of both the trial officials and the prison officials. Every prisoner while on parole remains in the legal custody of the institution from which he was released but is amenable to the orders of the Board. If the parolee's employment is out-of-state, the parole authorities of the state concerned are contacted for acceptance of supervision through the Interstate Parole Compact Administrator.
 The contents of the pamphlet are apparently a Board extension of the Texas Code of Crim.Proc. Art. 42.12, Sec. 15(b) which provides that:
 The pamphlet itself is further identified by Cruz within his original pro se brief before this court, filed before counsel was appointed to represent him, as The Rules and Regulations, Texas Department of Corrections, as approved by the Texas Board of Corrections July 9, 1973.
 
 
 [5]
 
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 TABLE
 
 
 [6]
 See Vernon's Texas civil Statutes Annotated Art. 6166a et seq
 
 
 [7]
 The admonition of Mempa v. Rhay, 1967, 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336, 340, that counsel must be appointed "at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected", does not apply here. Parole revocation is not part of a criminal prosecution. Morrissey v. Brewer, 1972, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484. A fortiori, the granting or withholding of parole is not a criminal proceeding or part of a criminal prosecution
 
 
 [8]
 Compare, Mempa v. Rhay, 1967, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336, (due process requires counsel at probation revocation and sentencing); Douglas v. California, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (lack of counsel deprives indigent defendant opportunity to show the merit of his case on direct appeal); Gideon v. Wainwright,5i 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (due process requires counsel be appointed for an indigent defendant at trial)