[No. 47957-7.   En Banc.   February 10, 1983.]

RAYMOND ARMENT, ET AL, *Appellants*, v. WILLIAM E. HENRY, ET AL, *Respondents.*

*Robert Adelman* and *John Midgley* of *Evergreen Legal Services,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Michael P. Lynch, Assistant,* for respondents.

DOLLIVER, J.—Plaintiffs were inmates at the Washington State Corrections Center in Shelton at the time of the "New Year's Riot" in 1981. All are indigent. Each was informed on March 18, 1981, he was scheduled to see the Board of Prison Terms and Paroles for a disciplinary hearing in April. The notices described the charges and stated if the inmate was found guilty, the Board could redetermine the inmate's minimum term and revoke any or all good time credits earned or to be earned. The notices further provided, "You may have an attorney of your choice represent you at the hearing, at your expense. . . . The law does not provide the authority for the Board to . . . pay any attorney fees".

On March 24, plaintiffs formally requested appointment of counsel. The requests were denied. On March 27, plaintiffs brought the present action on behalf of themselves and all others similarly situated to compel the Board to appoint counsel. They also sought to prohibit the Board from holding disciplinary hearings without offering to appoint counsel for indigent inmates.

On April 2, the trial court entered an interim order which permitted the Board to hold the scheduled disciplinary hearings without providing counsel for plaintiffs, and which also provided safeguards for the plaintiffs should they prevail on their claim of right to counsel. The hearings were held as scheduled, and the minimum term of each plaintiff was lengthened by 3 years.

Both sides then filed cross motions for summary judg-

ment. Steve Scott, Director of Institutional Legal Services Project, filed an affidavit in support of the plaintiffs' motion. Scott stated that after *Monohan v. Burdman,* 84 Wn.2d 922, 530 P.2d 334 (1975) was decided, Institutional Legal Services Project represented all indigent inmates at Parole Board disciplinary hearings, but subsequent decreases in funding made this service no longer possible. Scott, who had represented many inmates at disciplinary hearings, said that an attorney's presence is very useful to an inmate, especially in establishing mitigating factors, exigencies, and rehabilitative factors. He further stated that, from his experience, proof of such factors often resulted in a technically guilty inmate not receiving a lengthened minimum term.

The trial court granted the Board's motion for summary judgment. The court held the constitution does not require the State to provide counsel for indigent inmates in disciplinary hearings. The plaintiffs' action has not yet been certified as a class action under CR 23.

The sole issue in this appeal is whether the Board of Prison Terms and Paroles is constitutionally required to appoint counsel for an indigent inmate before increasing the inmate's minimum sentence at a disciplinary hearing held pursuant to RCW 9.95.080.

Initially, we must distinguish various types of hearings. The hearings in this case were not parole revocation hearings, *see* RCW 9.95.120–.126, nor were they the type of institutional disciplinary hearings contemplated by WAC 275–88–005 through WAC 275–88–130. They were hearings under RCW 9.95.080, which states:

> In case any convicted person undergoing sentence in the penitentiary, reformatory, or other state correctional institution, commits any infractions of the rules and regulations of the institution, the board of prison terms and paroles may revoke any order theretofore made determining the length of time such convicted person shall be imprisoned, including the forfeiture of all or a portion of credits earned or to be earned, pursuant to the provisions of RCW 9.95.110, and make a new order determining the

length of time he shall serve, not exceeding the maximum penalty provided by law for the crime for which he was convicted, or the maximum fixed by the court. Such revocation and redetermination shall not be had except upon a hearing before the board of prison terms and paroles. At such hearing the convicted person shall be present and entitled to be heard and may present evidence and witnesses in his behalf.

The sanctions which may be imposed under an RCW 9.95.080 Parole Board disciplinary hearing are far more serious than those prescribed under institutional disciplinary hearings. *See* WAC 275–88–105. Plaintiffs contend that because of the possible severity of the sanctions under RCW 9.95.080 they are entitled as a matter of constitutional right to counsel in an RCW 9.95.080 proceeding.

■ The case law can be stated succinctly: (1) Some minimum due process is required in probation or parole revocation hearings. *Morrissey v. Brewer,* 408 U.S. 471, 489, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972); *Wolff v. McDonnell,* 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974); and *Monohan v. Burdman,* 84 Wn.2d 922, 530 P.2d 334 (1975). (2) There is no constitutional requirement in probation or parole revocation hearings that in all cases indigent prisoners must be provided with counsel, but exceptions are available on a case–by–case basis. *Gagnon v. Scarpelli,* 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973). (3) A lesser standard of due process is required in disciplinary proceedings when a prisoner is already incarcerated rather than on probation or parole. Not only is the sanction in prison disciplinary hearings "qualitatively and quantitatively different from the revocation of parole or probation" but the State also has a far different stake in prison disciplinary hearings than in the revocation of probation or parole. *Wolff v. McDonnell, supra* at 561–62.

In *Vitek v. Jones,* 445 U.S. 480, 496–97, 63 L. Ed. 2d 552, 100 S. Ct. 1254 (1980), the Supreme Court stated:

We have not required the automatic appointment of counsel for indigent prisoners facing other deprivations of liberty, *Gagnon* v. *Scarpelli,* 411 U. S., at 790; *Wolff* v.

*McDonnell,* 418 U. S., at 569–570; but we have recognized that prisoners who are illiterate and uneducated have a greater need for assistance in exercising their rights. *Gagnon* v. *Scarpelli, supra,* at 786–787; *Wolff* v. *McDonnell, supra,* at 570. A prisoner thought to be suffering from a mental disease or defect requiring involuntary treatment probably has an even greater need for legal assistance, for such a prisoner is more likely to be unable to understand or exercise his rights. In these circumstances, it is appropriate that counsel be provided to indigent prisoners whom the State seeks to treat as mentally ill.

*See United States v. DeRobertis,* 508 F. Supp. 360 (N.D. Ill. 1981).

In *Monohan v. Burdman, supra,* relied upon by plaintiffs, Monohan alleged a tentative parole release date given him while in the Washington State Corrections Center was canceled without appropriate notice and an adjudicatory hearing. He had been on furlough pursuant to RCW 72.66 to undertake development of a parole plan in his home community when he allegedly became involved in a drug oriented party and was charged with disorderly conduct. On the same day Monohan was returned to the Corrections Center the authorities there were advised all charges had been dismissed. The court posed the issue as follows:

> The precise question posed here is whether the right of minimal due process hearings, as guarantied to probationers and parolees under *Gagnon v. Scarpelli, supra,* and *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972), should be accorded to proceedings leading up to the cancellation of a previously established, tentative parole release date for reasons other than inability to develop an acceptable parole rehabilitation plan. As we have indicated, we believe it should.

*Monohan,* at 926. In contrast to *Monohan,* the hearings in this case were for the discipline of infractions which occurred within the prison.

Plaintiffs urge us to adopt a per se rule for right of counsel in RCW 9.95.080 disciplinary hearings. This we refuse to do. As we have pointed out no such requirement is made by

the United States Supreme Court even in probation or parole revocation hearings. Although *Monohan* held minimal due process hearings were required in the circumstances of that case which involved parole rescission, the court did not list right to counsel in its catalog of minimum due process requirements. Right of counsel is conspicuous by its absence. *Monohan v. Burdman, supra* at 930.

Even though the penalties may be severe, the hearing under RCW 9.95.080 is essentially an informal procedure (*compare* RCW 9.95.080 *and* Board of Prison Terms and Paroles rule 4.070(4), State Register 82–08–001 (1982), *with* RCW 9.95.120–.126). This hearing need not have the "full range of procedures suggested by *Morrissey* for alleged parole violators". *Wolff v. McDonnell, supra* at 561. The same rationale articulated in *Wolff v. McDonnell* is applicable here:

> The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process.
>
> Indeed, it is pressed upon us that the proceedings to ascertain and sanction misconduct themselves play a major role in furthering the institutional goal of modifying the behavior and value systems of prison inmates sufficiently to permit them to live within the law when they are released. Inevitably there is a great range of personality and character among those who have transgressed the criminal law. Some are more amenable to suggestion and persuasion than others. Some may be incorrigible and would merely disrupt and exploit the disciplinary process for their own ends. With some, rehabilitation may be best achieved by simulating procedures of a free society to the maximum possible extent; but with others, it may be essential that discipline be swift

and sure. In any event, it is argued, there would be great unwisdom in encasing the disciplinary procedures in an inflexible constitutional straitjacket that would necessarily call for adversary proceedings typical of the criminal trial, very likely raise the level of confrontation between staff and inmate, and make more difficult the utilization of the disciplinary process as a tool to advance the rehabilitative goals of the institution.

(Footnote omitted.) *Wolff v. McDonnell, supra* at 562–63.

The proceeding here is comparable to the proceeding in *Wolff v. McDonnell.* It is a hearing to determine and sanction misconduct within the prison. We hold due process does not require a right of counsel in an RCW 9.95.080 hearing.

In addition to their due process contentions, plaintiffs also claim a violation of the equal protection clauses of the state and federal constitutions. Board of Prison Terms and Paroles rule 4.070(4) provides:

[The inmate] will have the right to have an attorney present, but at his own expense since the Board has no funds to pay for attorneys, witness fees, the cost of subpoenaes or any other related costs that may be incurred by the inmate.

State Register 82–08–001 (1982), at 24.

Plaintiffs rely on *Dillenburg v. Morris,* 84 Wn.2d 353, 525 P.2d 770 (1974), which involved an on–site parole revocation hearing. In a parole revocation hearing RCW 9.95.122 permits an alleged parole violator "to be represented by an attorney of his own choosing and at his own expense". It also allows counsel for an indigent alleged violator, "*Provided,* That funds are available for the payment of attorneys' fees and expenses." RCW 9.95.122. The court held the statute violated state and federal operation of equal protection under the law.

*Dillenburg* is distinguishable. Here the statute in question, RCW 9.95.080, in contrast to RCW 9.95.122, does not provide for any right of representation by counsel at disciplinary hearings. Rather than being controlled by *Dillenburg,* the case before us is analogous to *Ganz v. Ben-*

*singer,* 480 F.2d 88 (7th Cir. 1973) and *Cruz v. Skelton,* 543 F.2d 86 (5th Cir. 1976). In *Ganz* the claim was a constitutional right to have appointed counsel at a parole release hearing while *Cruz* involved the right of counsel at a parole application proceeding. In both cases there was an agency similar to the Board of Prison Terms and Paroles. Each agency had adopted a rule relative to counsel for an inmate. In both cases the agency rules failed to provide counsel for the indigent. The rule in *Ganz* stated "relatives, friends and counsel for the prisoners may attend and be heard in behalf of the prisoners whose names appear on the docket, as well as persons who desire to protest the release of the prisoners." *Ganz,* at 90 n.4, quoting Illinois Pardon and Parole Board rule 8. In *Cruz* the agency rule stated, "'Any interested person or members of the family may appear before the Board on behalf of an inmate with or without legal counsel.'" *Cruz,* at 95, quoting Rules and Regulations, Texas Department of Corrections, § 7.6 (1973). The rule of the Washington Parole Board simply provides the "prisoner will have the right to have an attorney present". Board of Prison Terms and Paroles rule 4.070(4).

The court in *Ganz* observed,

> even if the presence of counsel may be desirable at parole release hearings, a lawyer is not indispensable to the effective conduct of such hearings. . . . [T]his rule of the Illinois Parole Board, in the words of Justice Frankfurter, does not "make lack of means an effective bar to the exercise" of the indigent's opportunity to obtain parole.

*Ganz,* at 90. Judge Stevens (now Justice Stevens) writing for the court stated:

> the Equal Protection Clause does not require the Illinois Pardon and Parole Board either (1) to repeal its rule permitting inmates to have the assistance of counsel, or (2) to provide such assistance for all inmates at state expense.

*Ganz,* at 91.

The court in *Cruz* stated,

> [t]he informal, unstructured procedures for considering

parole application to the Texas Board of Parole do not present a forum in which the special analytical, research or forensic skills of the lawyer are necessary, nor even likely to prove particularly helpful. Cf. *Gagnon v. Scarpelli,* 1973, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. We reject the contention that the Texas procedure operates to deny a meaningful and fair consideration by the Board of Parole application of an indigent prisoner because he is unable to afford counsel. *Ganz v. Bensinger,* supra.

(Footnote omitted.) *Cruz,* at 96.

We concur in the reasoning of *Ganz* and *Cruz* and hold the Board of Prison Terms and Paroles is not required under the equal protection clause of the United States and Washington Constitutions either to repeal its rule permitting counsel to be present at a disciplinary hearing or to provide counsel for indigent inmates at State expense.

Affirmed.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, DIMMICK, and PEARSON, JJ., concur.

DORE, J. (dissenting)—The Board of Prison Terms and Paroles (Board) should be constitutionally required to appoint counsel for an indigent inmate before increasing the inmate's minimum sentence at a disciplinary hearing held pursuant to RCW 9.95.080. I would reverse.

Though the State is not constitutionally obligated to provide counsel in all cases, it should do so where the indigent probationer or parolee may have difficulty in presenting his version of disputed facts without the examination or cross examination of witnesses or the presentation of complicated documentary evidence. *Gagnon v. Scarpelli,* 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973), interpreting the due process protection afforded in probation or parole revocation hearings under *Morrissey v. Brewer,* 408 U.S. 471, 489, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972).

The majority maintains a Board hearing under RCW 9.95.080 is analogous to the in-system disciplinary hearing

described in *Wolff v. McDonnell,* 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974). In *Wolff,* the prison inmates were faced with possible withholding of "good–time credits" for alleged misconduct within the institution. The Court held the inmates had no right to retained or appointed counsel in such proceedings, although counsel substitutes should be provided in certain cases. The majority apparently bases its analogy to *Wolff* on these premises: (1) the loss suffered by an inmate at a Board disciplinary hearing is no greater than that of an inmate losing "good–time credits" and (2) Board disciplinary hearings are not contested cases like parole revocations of *Morrissey,* but are merely behavioral adjustment tools as in *Wolff,* and the insertion of counsel would change the nature of the hearings. I cannot accept this misguided logic.

The majority confuses the Board's power not to certify good time with its ability to take away future good time. The two functions are controlled by different statutes, have considerably different impacts on the individual and, appropriately enough, invoke different due process considerations. The only statute that authorizes the Board to take away future good time is RCW 9.95.080. In *Monohan v. Burdman,* 84 Wn.2d 922, 530 P.2d 334 (1975), this court held that the right of minimal due process hearings, such as were guaranteed to probationers and parolees under *Gagnon* and *Morrissey,* should be accorded to proceedings under RCW 9.95.080 leading up to the cancellation of a previously established tentative parole release date for reasons other than inability to develop an acceptable parole rehabilitation plan.

The majority confuses the obligation of the Board under RCW 9.95.080 with the powers conferred upon it under RCW 9.95.070, the type of statute under consideration in *Wolff.* RCW 9.95.070 allows the Board to certify *past* good time in an effort to adjust inmates' daily behavior, and is far different from RCW 9.95.080, which seeks to severely punish inmates for serious infractions. The Board may not take away *future* good time absent a hearing pursuant to

RCW 9.95.080.

The disciplinary hearings in the present case are quasi–judicial adversary hearings akin to the parole revocation hearings in *Morrissey*. The potential loss suffered by the inmates here is far greater than that imposed upon the inmates in *Wolff*. The majority in fact concedes "[t]he sanctions which may be imposed under an RCW 9.95.080 Parole Board disciplinary hearing are far more serious than those prescribed under institutional disciplinary hearings. *See* WAC 275–88–105." Majority opinion, at 778. Additionally, the term of imprisonment may be extended only after discrete factual findings. The Board itself acknowledged the adversary nature of the disciplinary proceedings when it adopted Board rule 4.070(4), which allows inmates who can afford counsel to be represented.

The same rationale we articulated in *Monohan* is applicable here:

> We pause to observe, as have several other courts, that the initial fixing of a tentative parole release date is of a discretionary nature and does not involve a due process hearing. . . . However, as we have noted, once parole or a promise of parole has been granted in the form of a tentative release date, we are satisfied that the prospective parolee enjoys a unique status and is *deserving of minimal due process safeguards* before cancellation of that date for reasons other than failure to develop an adequate rehabilitation plan.

(Italics mine.) *Monohan*, at 929.

The right to counsel is required "when procedural fairness demands it." *Tetro v. Tetro*, 86 Wn.2d 252, 253, 544 P.2d 17 (1975). Without counsel, the inmates here are left alone to prepare a defense against a charge of rioting that occurred almost 100 miles away. The majority in effect expects these young inmates, who never even graduated from high school, to present their versions of a disputed set of facts where the presentation requires the examining and cross–examining of witnesses and the offering or dissecting of complex documentary evidence, all without benefit of counsel. This is precisely the situation where procedural

fairness demands the right to counsel.
I would reverse.

UTTER, J., concurs with DORE, J.

Reconsideration denied April 20, 1983.