IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 84202-1-I |
| DEVON J. SCOLLARD, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

COBURN, J. — Department of Corrections (DOC) inmate Devon Scollard lost credit for time served for good conduct as a result of seven serious infractions. He files this personal restraint petition (PRP) to challenge these disciplinary proceedings. Four of the disciplinary hearings were held consecutively on the same day. The first hearing, which he does not challenge, was completed with Scollard present. However, he was not allowed to attend his next three hearings "due to his disruptive behavior" during his first hearing. He contends that he was denied his due process right to call witnesses and present evidence in some of the hearings, that he was denied his due process right to notice of an infraction he was found guilty of as a lesser included of a different infraction, and that in other hearings some of the violations were not supported by sufficient evidence. We conclude that the hearing officer's actions were arbitrary and

Citations and pincites are based on the Westlaw online version of the cited material.

capricious in four of the hearings resulting in a loss of good-time credits that amounts to an unlawful restraint. We grant the petition in part, deny in part, reverse four of the infractions and remand for new hearings.

PRP Standard of Review

Prison discipline is an essential function of the day to day management of a safe and secure correctional institution. In re Pers. Restraint of Grantham, 168 Wn.2d 204, 215, 227 P.3d 285 (2010). "Prisoners facing discipline are not entitled to the full panoply of constitutional protections afforded defendants facing criminal charges." Id. (citing Arment v. Henry, 98 Wn.2d 775, 778, 658 P.2d 663 (1983)). We will only reverse prison discipline decisions when petitioners show that they are being unlawfully restrained. RAP 16.4(a)-(c); Grantham, 168 Wn.2d at 212-13. Under RAP 16.4, a prisoner is under "restraint" if the petitioner is confined, and the "restraint" is unlawful only if the conditions or manner of the "restraint" violated the Constitution or the laws of Washington, or other grounds exist to challenge the legality of the restraint. RAP 16.4(b); RAP 16.4(c)(6)-(7). Scollard is under restraint here as a result of the serious infraction decisions at issue resulting in the loss of credit for time served for good conduct. See In re Pers. Restraint of Malik, 152 Wn. App. 213, 218, 215 P.3d 209 (2009) (citing In re Pers. Restraint of Krier, 108 Wn. App. 31, 37, 29 P.3d 720 (2001)). Although a petitioner generally must establish that a constitutional error resulted in actual or substantial prejudice, this standard does not apply to prison disciplinary actions when the petitioner lacked an earlier opportunity for judicial review. Grantham, 168 Wn.2d at 214.

We review prison disciplinary proceedings to determine whether the action taken was "so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding." Malik, 152 Wn. App. at 218. An arbitrary and capricious action is a willful and unreasoned action without consideration of and in disregard of facts and circumstances. In re Pers. Restraint of Reismiller, 101 Wn.2d 291, 296, 678 P.2d 323 (1984). An action meets this standard when a petitioner is not afforded the minimum applicable due process protections in a prison disciplinary hearing or if the decision of the hearing officer is not supported by at least some evidence. Malik, 152 Wn. App. at 218. Minimum due process protections include notice, an opportunity to provide evidence and call witnesses if doing so is "not unduly hazardous to institutional safety and correctional goals," and timely receipt of a written statement of the evidence relied upon and the reasons for the discipline. Grantham, 168 Wn. App. at 215-16 (quoting In re Pers. Restraint of Gronquist, 138 Wn.2d 388, 396, 978 P.2d 1038 (1999)).

We address the facts of each infraction in turn.

Infraction Group Numbers 34-36

In August 2020, while incarcerated at Stafford Creek Corrections Center, Scollard received infractions for refusing a cell or housing assignment on four occasions. In the first instance on August 7, a correctional officer went to Scollard's cell and informed him that he was being moved from the floor of his current cell to a new cell, but Scollard refused to move. As a result, DOC charged Scollard with Infraction Group Number (IGN) 33 for violating rule 724 under Washington Administrative Code (WAC) 137-25-030(1), refusing a cell or housing assignment. Scollard requested witness statements from his two cellmates who were present for the incident. Both

witnesses provided their statements on the prison's Witness Statement forms prior to the hearing.

On August 12, DOC again asked Scollard to move from his cell but he reportedly stated, "I'm comfortable with the cellies I have. I'm prepared to take whatever infraction comes my way. I'm already closed out so a little bit of cell confinement won't bother me." In IGN 34, DOC again charged Scollard for violation rule 724. Scollard again requested the hearing officer obtain witness statements from his two cellmates.

The next day, DOC again asked Scollard to move to a new cell but he reportedly stated, "no, I'm not moving." According to a DOC officer, Scollard still refused to move after being warned that he would receive an infraction for refusing to move. DOC again charged Scollard for violating rule 724 in IGN 35. Scollard requested two witness statements, indicating cell numbers of the inmates who saw the incident.

On August 14, DOC asked Scollard to move cells for a fourth time but again he reportedly refused stating, "no, I'm comfortable where I'm at. I'm not moving in with some weirdo." He was then offered an empty cell but again refused to move, reportedly stating, "you guys got me fucked up. Go ahead and keep writing me up. Per policy you can only write me up once a week so I don't care." Once again, DOC charged Scollard for violating rule 724 in IGN 36. He again requested two witnesses and provided their cell numbers.

DOC held disciplinary hearings for each of the four infractions consecutively on

4

the same day in late August.[1]  IGN 33 was held first.[2]  Although Scollard does not challenge IGN 33, his conduct during that hearing is the basis of why he was not permitted to attend the next three hearings.  Thus, we discuss the interactions during that hearing.

During the first hearing, the hearing officer first read a DOC officer's report that stated Scollard refused to move to a new cell and was told that if he did not move he would receive a major infraction.  The officer reported that Scollard responded by saying, "I don't care[.]  I'll take the write up, I'm already closed out[.]  I'm not moving out of my cell."  The hearing officer then read the two witness statements requested by Scollard.  Both essentially explained that Scollard was explaining to the officer that Scollard knew the person in the other cell, that they did not get along, and that there may be an issue if they moved Scollard there, but that he would move if faced with a potential infraction.  After Scollard pleaded not guilty to violating rule 724, the hearing officer allowed Scollard to make a statement.  Scollard denied refusing to move and said he was explaining to the DOC officer why the move was forcing him into a conflict.  Scollard said he told the officer he would move if he was going to get an infraction.  Scollard then started to refer to DOC policies regarding cell assignments and how they say DOC should consider safety, security and offender treatment and rehabilitative needs.  At this point, the following exchange took place.

| [Hearing Officer]: | Alright, I don't need, I don't need I don't need to hear all this stuff.  Hold on |

---

[1] Most of the hearings were originally scheduled on different days (IGN 33 for August 17, IGN 34 for August 20, and IGN 35 and 36 for August 24).  The record does not explain why they were re-scheduled for consecutive hearings on August 20.  The hearing examiner issued its findings and sanctions for all four hearings on August 20 (at 1316 hours for IGN 33, 1325 hours for IGN 36, 1339 hours for IGN 34, and 1354 hours for IGN 35.

[2] The record does not include any audio recordings of any of the hearings.

| | |
|---|---|
| Scollard: | Well hold on, hold on |
| [Hearing Officer]: | You hold on. |
| Scollard: | Okay. |
| [Hearing Officer]: | Are you saying you didn't make this comment that's, that's listed in the report? I don't care I'll take the write up, I'm already closed out. |
| Scollard: | One hundred percent. |
| [Hearing Officer]: | What you're saying you you didn't say that? |
| Scollard: | No I never I never said that. |
| [Hearing Officer]: | So what you're saying that he's just making that up? |
| Scollard: | Uh one hundred percent he's making that up. |
| [Hearing Officer]: | Huh. |

Scollard continued and discussed how housing criteria included self-disclosed concerns of the offender and that he was making such a disclosure that identified a security issue or altercation that would happen between himself and the person in the new cell. Scollard explained he was referring to policy numbers from the policy handbook.

| | |
|---|---|
| [Hearing Officer]: | Yeah I heard you, you already said that. |

Scollard then said, while referencing the policies, "we have a right to get a courtesy movement if I flip over here to the other one." The hearing officer immediately corrected Scollard.

| | |
|---|---|
| [Hearing Officer]: | No you don't. |
| Scollard: | Oh okay we don't have the right, you're right one hundred percent. The facility may initiate a cell bed move for an [sic] administrative |

6

|  | reasons. I believe that that's an administrative reason, there's a security threat. |
|---|---|
| [Hearing Officer]: | Alright. |
| Scollard: | I mean you're not letting me finish. |
| [Hearing Officer]: | You're just talking around things man alright. |
| Scollard: | I'm stating facts sir. |
| [Hearing Officer]: | Yeah I know that but you're repeating yourself too. |
| Scollard: | Oh okay well can I move to the next part, . . . |

Scollard then continued to talk about policies and made statements that the hearing officer had to clarify before Scollard said that he was trying to explain that his communications at the time of the request to move cells was his attempt at avoiding conflict. At this point, the hearing officer began to wrap up the hearing.

| [Hearing Officer]: | Okay, gotcha. You already said that. Alright, I'm gonna turn off the tape while I conduct deliberations returning my decision. |
|---|---|
| Scollard: | Yes, sir. |
| [Hearing Officer]: | Back on the record infraction hearing for Scollard. Based on the infraction report and your testimony and the inmate witness statements you requested. I'm gonna find you guilty of 724. |
| Scollard: | I just stated, I just stated policies. |
| [Hearing Officer]: | Sanction proposed fifteen days loss of good conduct time. That will be scheduled by the unit sergeant served in the unit. That concludes this hearing. |
| Scollard: | Sir, I. |

The disciplinary hearings for IGN 34, 35, and 36 were held consecutively immediately

7

after the first hearing in Scollard's absence. On the Disciplinary Hearing Minutes and Findings form for each hearing, the hearing officer noted Scollard's absence and the reason for the absence. In IGN 34, the hearing officer indicated on the "Inmate not allowed to attend hearing due to his disruptive behavior during first of four consecutive hearings. Inmate was argumentative, accusatory, and demanding. Inmate would not stop arguing about his guilty finding and sanction." The form also noted that Scollard's requests for witness statements had been denied because "[Inmate] made a direct refusal to staff stating he will not move from his cell." The hearing officer explained in IGN 35 and 36 that "inmate not allowed to attend hearing due to disruptive behavior during the first of four consecutive hearings." The hearing officer also denied Scollard's request for witness statements stating, "request for witness statements denied. [Inmate] made direct refusal to move to new cell as ordered."

Scollard was found guilty of violating rule 724 in IGN 34, 35, and 36. As a result of the convictions, Scollard was sanctioned to a cumulative loss of 105 days of good time credit toward his sentence.

At oral argument, the parties agreed that the record of the first hearing ended at the time the hearing officer stopped the recording, which appears to end mid-sentence while Scollard began to speak after the hearing officer made its ruling and issued its sanction. The parties nevertheless maintain that the record is sufficient for our review. DOC confirmed that the basis for the hearing officer's decision to remove Scollard from the subsequent hearings was Scollard's conduct during the first hearing, as reflected in the transcript. Wash. Court of Appeals oral argument, In re Pers. Restraint of Scollard, No. 84202-1-I (July 26, 2023), at 9 min., 3 sec. through 10 min., 30 sec., *video*

8

*recording by* TVW, Washington State's Public Affairs Network,

https://www.tvw.org/watch/?clientID=9375922947&eventID=2023071145.  Based on

this representation, we conduct our review with the understanding that the only

evidence of Scollard's disruptive conduct is contained within the transcript of the first

hearing.

Scollard contends that DOC violated its own policies in preventing him from

attending his disciplinary hearings for IGN 34, 35, and 36, and deprived him the

opportunity to provide evidence and call witnesses.  We agree.

*A. Presence*

DOC's policies provide offender rights that include the right to "[b]e present at the

hearing or waive presence at the hearing."  WAC 137-28-285(1)(c).  WAC 137-28-300

addresses, in relevant part, the conduct of disciplinary hearings:

(1) The hearing officer shall ensure that the offender's rights are protected throughout the hearing . . .

(2) The offender shall be present at all stages of the hearing, except during deliberations, examination of any physical evidence and/or confidential information, and any inquiry the hearing officer may make concerning the evidence/information presented, including the source(s) of confidential information.

. . .

(3) An audio recording will be made of all category A, B, and C hearings.[3] A written record will also be made of all hearings.

(a) The record shall include:

. . .

(x) The reasons for denying any witnesses;

---

[3]  All of Scollard's rule violations were under categories that required the hearing to be audio recorded.  See WAC 137-28-300(3).

9

(xi) Any witness statements requested by the offender or hearing officer that were not provided or were unavailable, if applicable;

(xii) Any witness questions proposed by the offender that the hearing officer did not ask and the reason(s) the questions were excluded (i.e., irrelevant, duplicative, or unnecessary);

(xiii) The hearing officer's decision, the sanction(s) imposed, and reasons.

(b) If the offender is found guilty, the hearing officer will ensure all related reports, recordings, and attachments become part of the offender's file.

. . . .

(5) If an offender's behavior disrupts the hearing, he/she may be removed and the hearing will continue on the record in the offender's absence.

(6) If the hearing officer determines that a witness's presence is necessary, the witness may participate by telephone or in person, at the hearing officer's discretion. If the hearing officer determines that participation would be unduly hazardous to facility safety or correctional goals, the witness will provide a written statement.

(7) The hearing officer has the authority to question all witnesses. The offender may submit proposed questions to be asked of witnesses, but the hearing officer may exclude questions that are irrelevant, duplicative, or unnecessary to the adequate presentation of the offender's case.

We do not find any published case addressing an inmate's removal. However, this court did address such a circumstance in an unpublished case.[4] See In re Pers. Restraint of Roberts, No. 78156-1-I, slip op. at 4 (Wash. Ct. App. April 20, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/781561.pdf. We upheld an offender's removal from a disciplinary hearing because the record showed the offender

---

[4] Unpublished opinions of the Court of Appeals have no precedential value, but may be cited as nonbinding authorities if identified as unpublished and may be accorded such persuasive value as the court deems appropriate. GR 14.1(a). Additionally, we may cite unpublished opinions where, as here, doing so is "necessary for a reasoned decision." GR 14.1(c).

"interrupted the [hearing officer] several times and spoke in a very loud voice" and that the offender failed to comply when asked to "quiet down and stop interrupting." Id. at 4.

In Roberts, the offender was removed from the hearing that the offender disrupted. Id. at 4. This is consistent with DOC's policy which provides "[i]f an offender's behavior disrupts *the hearing*, he/she may be removed and *the hearing* will continue on the record in the offender's absence." WAC 137-28-300(5) (emphasis added). DOC maintains that Scollard was not permitted to attend his disciplinary hearings for IGN 34-36 because of his disruptive conduct during the hearing for IGN 33. Indeed, the hearing officer noted that the reason Scollard was not permitted to attend the last three hearings on August 20 was "due to his disruptive behavior during the first of four consecutive hearings." The hearing officer noted that Scollard had been "argumentative, accusatory, and demanding."[5]

During the first hearing, Scollard said "hold on" after the hearing officer interrupted Scollard's invited statement by telling Scollard that the hearing officer did not "need to hear all this stuff." The hearing officer immediately told Scollard that he is the one who needed to "hold on," and Scollard responded by saying, "Okay." The hearing officer then continued to engage with Scollard by asking him questions. Later, when the hearing officer informed Scollard that he was repeating himself, Scollard responded by saying, "Oh okay well can I move to the next part." The hearing officer permitted

---

[5] In its briefing and at oral argument, DOC maintained that the basis for the hearing officer's decision to remove Scollard from the subsequent hearings was Scollard's conduct during the first hearing, as reflected in the transcript. Scollard, at 9 min., 3 sec. through 10 min., 30 sec. Thus, we need not consider and do not address whether an offender's behavior outside the recording and prior to the start of the next consecutive hearing may support removal of the inmate for disrupting "the hearing" under WAC 13-28-300(5) because that is not the set of facts before us.

11

Scollard to continue. The hearing officer then, in essence, told Scollard that he understood Scollard's argument, that he was repeating himself, and that the hearing officer was going to turn off the tape to deliberate. Scollard responded by saying, "Yes, sir." When the hearing officer came back on the record and found Scollard guilty and sanctioned him, the recording captured Scollard saying, "I just stated, I just stated policies" in the middle of the hearing officer's ruling, but it did not appear to disrupt the officer's ability to announce his ruling. Unlike the record in Roberts, the record before us does not provide any evidence of Scollard interrupting several times or otherwise disrupting the hearing. In Roberts, the hearing officer asked the offender to quiet down and stop interrupting without success. In the instant case, when the hearing officer told Scollard he needed to hold on, Scollard responded by saying, "Okay." When the hearing officer corrected Scollard that he did not have a right to a courtesy move, Scollard agreed saying, "Oh okay we don't have the right, you're right one hundred percent." When the hearing officer told Scollard he was repeating himself, Scollard responded by saying, "Oh okay well can I move to the next part" and the hearing officer permitted Scollard to continue. When the hearing officer indicated to Scollard that he was done taking Scollard's statement and was going to deliberate, Scollard stopped and said, "Yes, sir."

Scollard asks us to hold that disruptive behavior in a prior hearing cannot be the basis for removal in a following hearing, even if the hearings are back to back. We need not answer that question in the present case because we are not persuaded that Scollard's conduct during the first hearing evidenced disruptive behavior, let alone establish a concern of disruptive behavior in the following hearings. We hold that,

12

based on this record, the hearing officer's decision to not allow Scollard to attend hearings for IGN 34-36 was arbitrary and capricious. Not only was Scollard prevented from making his own statement at the hearings, his requests for witness statements also were denied, which we address next.

*B. Witnesses*

In IGN 34, Scollard had requested statements from two witnesses to the incident. The hearing officer denied the request because "[inmate] made a direct refusal to staff stating he will not move from his cell." In IGN 35, Scollard also requested statements from two different witnesses than in IGN 34 and provided their cell numbers. The hearing officer denied the requests because "[inmate] made a direct refusal to move to a new cell when ordered." In IGN 36, Scollard again requested two witness statements, but the hearing officer once again denied the request because "[inmate] made direct refusal to move to new cell as ordered."

Minimum due process protections include providing offenders an opportunity to provide evidence and call witnesses if doing so is "not unduly hazardous to institutional safety and correctional goals." Grantham, 168 Wn. App. at 215-16 (quoting Gronquist, 138 Wn.2d at 396). The hearing officer denied Scollard's request for witness statements merely because a DOC officer reported that Scollard made direct refusals to change cells. The hearing officer decided to credit the DOC report without having the need to consider possible conflicting evidence.[6] The hearing officer's decision to deny Scollard's witness statements was arbitrary and capricious.

We conclude that denying Scollard an opportunity to provide evidence and call

---

[6] We observed that the hearing officer did consider witness statements in IGN 33 despite the fact Scollard reportedly directly refused to change cells.

witnesses violated his minimum due process protections and denied him fundamentally fair proceedings in IGN 34-36.

<u>IGN 37</u>

On August 25, 2020, Scollard was walking to the commissary with other inmates when a correctional officer observed him walk past a tier where several hazmat porters were cleaning. The officer observed Scollard yell out to the porters "Hell yeah, good job boys. I am proud of you. Fuck that shit up." A few hours later, Scollard was again approached about a new cell assignment. When Scollard was told to pack his belongings and come out of the cell, Scollard told officers he would not move to the new cell "because he was not a drop out or a sex offender." Later that afternoon, Scollard was directed out of his cell where he was placed into restraints and put into a holding cell to await transport to a restricted housing unit because of his behavior throughout the day. While in the holding cell Scollard began kicking the cell door before stopping and being transported without incident. DOC charged Scollard in IGN 37 for violating rule 651 under WAC 137-25-030(1), inciting others to riot for yelling at the porters, and violating rule 724 for refusing a cell assignment. Scollard requested witness statements from inmates Zachary Johnston, Eric Coston, and Israel Cochon.[7] Scollard also proposed several questions for the witnesses to answer. Johnston and Coston's statements were provided to the hearing officer, but Cochon's was not. It is apparent from the question Scollard proposed asking that Cochon was presented as a witness to

---

[7] Scollard had listed Zachery Johnston and Eric Coston on the front of the form listing requested witness statements. Under their names, Scollard wrote, "See Back For Others." On the back, he listed Israel Cochon and included questions Scollard wished to ask each of his witnesses.

the rule 724 violation.[8]

At the subsequent disciplinary hearing, Scollard explained his behavior and denied yelling at porters or inciting others to riot. He did admit to kicking the door of the holding cell. The hearing officer found Scollard guilty of violating rule 724, but reduced the violation of rule 651 to a "lesser infraction" of violating rule 600, which is tampering, damaging, or blocking any locking or security device. As a result, Scollard was sanctioned to a loss of 45 days of good conduct time.

*A. Witnesses*

Scollard argues that his right to present witnesses and propose questions for them was violated. According to the Disciplinary Hearing Minutes and Findings, the hearing officer did not deny any request for witness statements. Yet, the record includes two witness statement forms completed by Johnston and Coston, but does not include any statement from Chacon. The hearing officer read both Johnston and Coston's statements into the record, but did not provide any explanation to why Chacon's statement was absent, contrary to WAC 137-28-300(3)(a)(x).

*B. Notice*

Scollard also contends that his due process right to notice was violated where the hearing officer did not find him guilty of the charged violation, but found him guilty of a different, uncharged violation based on entirely separate conduct from the original charge. Scollard was charged with inciting others to riot in violation of rule 651 under WAC 137-25-030(1), but found guilty of violating rule 600, tampering with, damaging, blocking, or interfering with any locking, monitoring, or security device.

---

[8] Scollard proposed asking Cochon if Scollard refused or packed up and made statements why he should not have to move.

The purpose of providing notice is to give a charged party the chance to clarify what the charges are and to marshal facts in his defense. Wolff v. McDonnell, 418 U.S. 539, 564, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). The United States Supreme Court has held that notice sufficient for minimum due process requires that an offender be given written notice informing him of the charges and enabling him to marshal the facts at least 24 hours before any disciplinary hearing. Id. Regulations allow a hearing officer to find an inmate guilty of a lesser included offense without issuing a new infraction report or conducting a new hearing. WAC 137-28-310(2).

DOC regulations define a "lesser included offense" as a less serious crime that the offender "necessarily committed in carrying out the charged violation." WAC 137-28-160(8). "Where the evidence suggests an inmate is guilty of an offense not charged and which is not a lesser included offense to a charged offense" the hearing officer may recommend new charges be filed to initiate a separate discipline hearing on the new offense. WAC 137-28-310(3).

Rule 651 prohibits inmates from "inciting others to riot, as defined in RCW 9.94.010." RCW 9.94.010(1) defines a prison riot as

> Whenever two or more inmates of a correctional institution assemble for any purpose, and act in such a manner as to disturb the good order of the institution and contrary to the commands of the officers of the institution, by the use of force or violence, or the threat thereof, and whether acting in concert or not, they shall be guilty of prison riot.

Rule 600, on the other hand, prohibits inmates from "tampering with, damaging, blocking, or interfering with any locking, monitoring, or security device."

Rule 651 in fact shares no elements with rule 600, meaning rule 600 is not a lesser included offense of rule 651 but is instead a separate charge requiring notice.

16

Scollard did not receive notice before being found guilty of rule 600 at the end of the disciplinary hearing for violating rule 651. This violated Scollard's minimum protections of due process and denied him a fundamentally fair proceeding.[9]

### IGN 43

On July 11, 2021, prison staff intercepted a letter on its way out of the prison addressed to "J. Barr, IV" with a return address to inmate Tyrell Jenkins. The letter stated in part "What's good fam we can chop it bout whatever on the phone, I'm shooting this on some strictly business shit. Spice on paper you heard of it? A whole sheet of paper goes for $2,000-4,000 right here." An investigation revealed that J. Barr IV was Jerry Lee Barr, a recently released inmate. Investigators discovered that the only inmate at Stafford Creek in touch with Barr by phone was Scollard. Investigators subsequently compared the letter to samples of Scollard's handwriting and determined that the letter was written by Scollard. They also obtained recordings of phone calls between Scollard and Barr linking them both to the letter. The infraction report discussed parts of the contents of the recordings:

> 7/10/2021[ ]8:11pm Scollard, Devon #374033 call to (360) 488-8727 Barr, J Mm 1:56 (background noise) hey who is that (ds) it's Jerry Mm 6:31 (ds) I got your brother's address and I am going to drop a line to your brothers address too. You know what I am saying (Jb) yea yea yea I will be waiting for it. 7/12/2021[ ]8:46pm Scollard, Devon #374033 call to (360) 488-8727 Barr, J Mm 10:00 (ds) That's coming to you this week you know (jb) Just send it to J money you know it's good (ds) I aint been fucking round 100% it's not even down like that bro shit at Shelton dog that shit again, (ds) when I get letter you know it's good (ds) I am dialed in right now.[10]

> DOC, in IGN 37, charged Scollard with violating rule 603 under WAC 137-25-

---

[9] Scollard also challenges the sufficiency of the evidence supporting the violation of 651, but Scollard was not found guilty of violating rule 651.

[10] The recording itself is not in the record.

030(1), conspiring to introduce or transfer any unauthorized drug or drug paraphernalia. Scollard requested witness statements from Investigator Denise Wilkie and prison education staff, Erin Lyman, as a character witness, with proposed questions for each. The hearing officer denied the requests because "the request for witness statement was an intergration [sic] of the infraction author" and the request for a staff was deemed not relevant based on the questions Scollard proposed. Although Scollard denied the allegations, he was found guilty and sanctioned to 75 days loss of good conduct time, along with the loss of other privileges.

Scollard argues that the finding was not supported by sufficient evidence and that his due process right to call witnesses and present evidence was violated. We disagree.

*A. Witnesses*

We first address Scollard's claim that his due process right to call witnesses was violated. Scollard requested two witnesses on his disciplinary hearing notice form, Denise Wilkie and Erin Lyman, both prison employees. Wilkie was the officer who conducted the investigation and provided a statement in both the Initial Serious Infraction Report and the subsequent Revised Serious Infraction Report. The proposed questions submitted by Scollard asked the witness to speculate on other potential outcomes of investigative steps and provide information already included in the infraction report. The denial of the proposed questions to Wilkies was not arbitrary or capricious.

Scollard requested the hearing officer ask Lyman "Has Devon Scollard #374033 been productive and eager in his attempts to get into collage [sic] upon his arrival at

18

Stafford Creek," noting "character witness" next to her name. Such information is not relevant as to whether Scollard committed the violation. The hearing officer's denial of Scollard's questions to Lyman was not arbitrary or capricious.

*B. Sufficiency*

Next, Scollard challenges the sufficiency of the evidence supporting the violation of rule 603. To affirm the hearing officer's decision to impose discipline on a prisoner, there must be "at least some evidence" to support the finding. Grantham, 168 Wn.2d at 216. To satisfy this test, "there essentially must be some reasonable connection between the evidence and the inmate in order to support" the infraction. In re Pers. Restraint of Anderson, 112 Wn.2d 546, 549, 772 P.2d 510 (1989). Under DOC rule 603, "introducing or transferring any unauthorized drug or drug paraphernalia" is a serious violation. WAC 137-25-030(1). DOC defines conspiring as "entering into an agreement with another person(s) to commit a violation." WAC 137-28-160(3). "Attempting or conspiring to commit [a serious violation] . . . shall be considered the same as committing the violation." WAC 137-25-030(1). To prove a conspiracy, the State must show that the conspirators agreed to undertake a criminal scheme and that they took a substantial step in furtherance of the conspiracy. State v. Bobic, 140 Wn.2d 250, 265, 996 P.2d 610 (2000). A conspiracy requires only that such an act be a "substantial step in pursuance of [the] agreement" rather than the underlying crime itself. State v. Dent, 123 Wn.2d 467, 477, 869 P.2d 392 (1994) (alteration in original).

Scollard argues there was no evidence that he entered into an agreement required for a conspiracy. The evidence provided to the hearing officer does provide some evidence that Scollard conspired with a person outside the facility to bring drugs

19

into the facility. The letter sent to former DOC inmate Jerry Lee Barr, IV referred to discussions on the phone. At the time the letter was sent, Scollard was the only inmate who had been in contact with Barr by phone. According to the investigator, "the letter contained instructions on how to spray K2 spice on paper and send it into the Stafford Creek Corrections Center." In addition, the hearing officer was provided with transcripts of phone calls between Barr and Scollard discussing a letter and addresses and telling Barr to expect a letter. In addition, the record reflects that the hearing officer was provided with a copy of the letter and samples of Scollard's handwriting. The hearing officer found that the writing on the letter is consistent with the old and new samples of Scollard's handwriting.

There was some evidence to support the hearing officer's finding that Scollard had taken a substantial step in pursuance of an agreement with Barr to introduce unauthorized drugs into the facility.

### IGN 47

In 2022, a correctional officer retrieved a toilet plunger from Scollard in his cell in order to pass the plunger to another inmate. As is standard practice, the officer searched the plunger for contraband before transferring it to the other inmate, as it was a known smuggling method in the prison. The officer discovered what appeared to be toilet paper shoved into the plunger handle and located a note on a torn piece of paper along with an orange substance wrapped in plastic. An investigator evaluated the items and identified the substance as approximately two small doses "rechewed buprenorphine (suboxone)," which was confirmed by two K-9 officers alerting to it as a narcotic. The investigation revealed that Scollard had not been prescribed suboxone by

20

Stafford Creek medical staff and should not have had it in his possession. According to the infraction report, the note included with the drugs stated:

> I currently only got 1 ½ pages of info left you feel me? But more on the way I was charging 4-5 hunnid [sic] but I know you know the cost I got you for 3 or 4 it's a good deal either price my guy I give you that room to wiggle with price cause I know if you got more youll send it. As for the other, heres a piece so you know I aint capping. I need to get 250$ a piece cause I get these in 7 came outta pocket 1400$ for 7 of these. I wanna make some of that back. Ill get rid of half of a quarter or whole but I don't wanna break it up any smaller than that cause I got 2 ½ set aside to sell . . . I'm shooting you these pieces on cap so you know I aint capping but you know what it is because you a hustler to you gotta pay Before you play. Dude already got me for a window sheet but this plunger work. So once I verify the cake their its all the way good. I was tieing it up in bags and getting toilet paper wet and having it at the top of the handel [sic] but we don't get those bugs no more so Ima just stuff it in there

In an interview, Scollard denied that the drugs were his, but "argued that the suboxone found was a prescription med and the infraction should be misuse of medication." DOC charged Scollard in IGN 47 with introducing or transferring an unauthorized drug in violation of rule 603 under WAC 137-25-030(1). Scollard requested witness statements from the investigating officer Wilkies, prison medical staff, and the hearing officer with proposed questions about why they would charge different violations for the transfer of different substances. The hearing officer denied his request as not relevant. The hearing officer found Scollard guilty and sanctioned him with a loss of 75 days of good time credit toward his sentence, among the loss of other privileges.

Scollard contends that the evidence did not show that he introduced the suboxone because he received it by prescription from medical staff at the jail and it was never actually transferred to the intended recipient.

DOC rule 603 prohibits inmates from introducing or transferring any unauthorized drug. WAC 137-25-030(1). "Attempting or conspiring to commit [a serious violation] . . .

21

shall be considered the same as committing the violation." WAC 137-25-030(1).

Scollard does not dispute the evidence reviewed by the hearing examiner who found:

> In reviewing the evidence there is 16 pictures 1 orange substance found in IMU plunger, 2 another picture of 2 orange substances found in plunger, 3 positive test for subixone [sic] on orange substance 4 picture of note written by scollard found in plunger, 5 picture of scollard handing plunger to the staff, 6 rolled up toilet paper found in handler of plunger 7 plunger handle, 8 plastic found in plunger handle, 9 rolled up paper with adhesive on it 10 items unrolled and laying on paper towel 11 paper found in plunger, 12 plastic found in plunger, 13 note found in plunger, 14 and 15 pictures of orange substance found in plunger 1 copy of note from plunger 2 pages of kite written to IIU in reviewing the video it shows staff getting the plunger f[ro]m scollard and when B03 asks for it inspecting it first found the contraband[.]

The note indicated that the author was flexible on price and was sending the drug as a sample so the recipient would know he was not lying about his ability to supply the drug. The handwriting in the letter was compared to and determined to match Scollard's. There was some evidence to support the hearing officer's finding that Scollard had transferred an unauthorized drug to another inmate. Because attempts and completed transfers are treated the same way under the regulations, sufficient evidence supports the hearing officer's finding of guilty.

Scollard also again challenges the hearing officer's decision to deny his witness statement requests. Scollard again proposed questions for the author of the infraction report, Wilkie, as well as a medical staff member and the hearing examiner. Scollard wanted to ask the witnesses about consequences for selling or transferring other types of drugs. The hearing examiner's denial of the request as not relevant was not arbitrary or capricious.

CONCLUSION

22

Because the disciplinary hearings for IGN 34, 35, 36, and 37 did not meet minimum due process protections required to provide a fundamentally fair hearing, we reverse those infractions and remand for a new hearing.[11] See Malik, 152 Wn. App. at 222 (remanding for rehearing where hearing officer failed to acknowledge, consider, or produce offender's requested witness statements in violation of offender's right to due process); In re Pers. Restraint of Atwood, 136 Wn. App. 23, 28, 146 P.3d 1232 (2006). Because Scollard did not establish a basis for relief for IGN 43 and 47, we deny the petition as to those infractions.

We grant the petition in part, deny in part, reverse IGN 34, 35, 36 and 37 and remand for new hearings.

_____Coburn, J._____

WE CONCUR:

_____Feldman, J._____          _____Dwyer, J._____

---

[11] Because the remedy for due process violations is remand for a new hearing, we deny Scollard's renewed motion for release pending resolution of the petition. A panel of this court previously denied the same motion that was filed before respondent's brief and reply brief were filed. See Order on Motion to Modify filed May 19, 2023. Also, at oral argument, Scollard's attorney argued the proper remedy should be reversal and reinstatement of good conduct time credit entitling Scollard to immediate release instead of remand for a rehearing because Scollard can no longer obtain the witness statements he requested at the initial hearings. Scollard, at 0 min., 35 sec. through 2 min., 20 sec. We do not consider counsel's argument which was neither briefed nor supported in the record. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (argument unsupported by reference to the record or citation to authority will not be considered).